JOURNAL ENTRY and OPINION
This is an appeal from sentences imposed by Judge Shirley Strickland Saffold following guilty pleas to two counts of rape, two counts of gross sexual imposition, all involving females under the age of thirteen years, and three counts of illegal use of a minor in nudity-oriented material or performance. Appellant James De Amiches claims that his prison term of forty-six to fifty-four years is the total of the maximum consecutive prison terms for his offenses and was imposed in violation of the sentencing statutes. The State contends that the judge complied with all relevant sentencing statutes, and that the record supports the sentences imposed. Because the record does not support the imposition of maximum consecutive prison terms, we modify DeAmiches' sentence and affirm as modified.
On September 28, 1999, DeAmiches, then age forty-four, was indicted on four counts of forcible rape involving two different girls, both under the age of thirteen, R.C. 2907.02; four counts of gross sexual imposition involving the same two girls, R.C. 2907.05; and eleven counts of illegal use of a minor in nudity-oriented material or performance, involving four minor girls, R.C. 2907.323. De Amiches was charged with photographing children in three of the eleven illegal use of a minor counts. In the other eight counts he was charged with possessing or viewing the material. The rape and gross sexual imposition charges all included sexually violent predator specifications, R.C. 2971.01.
The charges followed revelations that De Amiches had sexually abused two girls. He admitted to the digital penetration of the two girls, and a search of his home uncovered a number of videotapes of nude children. On December 28, 1999, he pleaded guilty to two counts of rape of a child under age thirteen, a first degree felony, but with each count amended to remove the allegation of force and the sexually violent predator specification. The effect of the amendments was to make him subject to a maximum prison term of ten years on each count. He similarly pleaded guilty to two counts of gross sexual imposition, amended to remove the sexually violent predator specification. Each of these counts was a third degree felony, subjecting him to a maximum term of five years in prison.[1] He also pleaded guilty to three counts of illegal use of a minor in a nudity-oriented performance: one of these counts alleged only illegal possession or viewing of materials under R.C. 2907.323(A)(3), a fifth degree felony punishable by a maximum of twelve months in prison; the two remaining counts charged him with photographing minors, a second degree felony under R.C. 2907.323(A)(1), currently punishable by up to eight years in prison, although one of those offenses occurred prior to the effective date of the current sentencing scheme.
At sentencing, the judge had access to the presentence investigation report, a report from a psychologist who had examined DeAmiches, and heard statements from De Amiches and one of the victims' mothers. The victim's mother stated:
 I listened to what Mr. De Amiches has said and I'll give you my own personal opinion. I don't care how sorry he is, and I don't care what his church thinks of him or his family. Judge, I did not bring a child into this world to have that happen to her. I didn't bring a child into this world for that. She didn't deserve it. I trusted this man. This man told me that he was a Christian. I trusted him. I don't care how sorry he is.
The presentence report set forth the facts surrounding DeAmiches' offenses, noting that he was the neighbor of one of the victims, and the others also lived in the neighborhood or were friends with neighborhood girls. He owned video recording equipment, and enticed several children to dance nude or simulate sexual behavior while being videotaped in his basement. This type of conduct apparently continued for several years, and involved at least five different girls, aged six to fifteen years at the time of the indictment. The violations escalated with two of the victims, as he eventually fondled and digitally penetrated them while they visited his home.
The psychologist's written report concluded that DeAmiches' mental and emotional levels were stunted, and in fact were little more developed than those of his victims. According to the report, he was unable to accept responsibility for his actions and blamed the children for enticing him. The report did opine, however, that he would benefit from counseling and treatment, and found that he was not violent and did not aggressively seek out children to satisfy his desires. The psychologist did not make any statement at the hearing.
The judge then pronounced sentence, imposing maximum prison terms of ten years each on the rape convictions, five years each on the gross sexual imposition convictions and twelve months on the illegal possession or viewing conviction. The judge imposed an eight-year prison term on one illegal photographing conviction and, having found that the second conviction was for an offense committed prior to 1996, sentenced De Amiches to an indefinite prison term of seven to fifteen years for that conviction. Except for the pre-1996 prison sentence, which went beyond the sentencing limits, each prison term was the maximum allowable for the offense committed. The judge then ordered all sentences served consecutively, resulting in a prison term of forty-six to fifty-four years, under the circumstances a life term.
The trial judge explained her sentencing decision, in relevant part, as follows:
 THE JUDGE: * * * The Court takes the following factors into consideration in sentencing. On the seriousness factors, the Court considers this more serious because of the following factors, the injury to the victim was worsened by the physical or mental condition of age, or age of victim; the explanation would be that the victims were ages 12 and 11.
 The Court further considers that the victims suffered serious physical, psychological or economic harm as a result of the offense. The explanation would be that [the victim] has sought counseling. The relationship with the victim facilitated the offense, the explanation would be that the defendant was the neighbor of [the victim]. * * * And that the said crime is a sex offense. The Court further — as a result of that, the Court finds that the offender is not amenable to an available community controlled section [sic]. And the Court further finds that the victims in this case were under the age of 13, right, Ms. Ducoff.
 MS. DUCOFF [assistant prosecuting attorney]: Yes, your Honor.
* * *
 THE JUDGE: Okay. The Court further finds that the defendant, as a result of the fact that both of these females being under the age of 13, Court finds that this is — that after listening to the comments of the mother of one of the victims, the Court finds that this is one of the worst cases of its kind.
 The Court finds that there was a misplacement of trust in this case, and that the defendant in this case used a trust of the parents and these young girls to involve them in this behavior. That he was their neighbor, that he was an individual that the neighbors trusted and believed that their children were safe with.
 As a result of that, these kids have been placed in counseling. The Court therefore finds that this is one of the worst cases of its kind.
* * *
 In order to protect the community and the public from future crimes, the Court will find that the offender committed the multiple offenses while he was out, that the harm caused to the victims in this case was so great and unusual that no single prison term would be appropriate. And that the sentence should demonstrate that consecutive sentences are necessary to protect the public from the future crime by the offender.[2]
We will address De Amiches' first and third assignments of error together.
 I. THE TRIAL COURT ERRED IN IMPOSING THE MAXIMUM SENTENCE ON COUNTS 1, 3, 10, AND 19.
 III. THE SENTENCES IMPOSED UPON APPELLANT ON COUNTS 5, 7, 11 AND 19 WERE CONTRARY TO LAW.
Although De Amiches does not challenge his sentences on the convictions for gross sexual imposition (counts five and seven), or on count eleven (the pre-1996 sentencing), as contrary to procedures relevant to maximum sentencing, we will address them here because they raise issues of plain error. He asserts in his brief that the gross sexual imposition convictions were second degree felonies under R.C. 2907.05, and did not challenge the five-year terms on those convictions because he did not believe them to be the maximum allowable. In fact, those convictions are third degree felonies, R.C. 2907.05(B), and he was, therefore, sentenced to the maximum prison term allowable for a third degree felony. As we read his brief to challenge all maximum prison terms imposed, we consider his arguments relevant to these convictions as well.
Before addressing the maximum prison terms, however, we first review the sentencing for count eleven, the offense of illegally photographing a minor, a second degree felony, R.C. 2907.323(A)(1), that occurred prior to July 1996. The assistant prosecutor was asked to state the penalties for that crime.
 THE COURT: Would you give me the sentencing guidelines, please, under the felony 2 under the old law?
 MS. DUCOFF: Three, four, five, six, seven or eight years on the minimum side up to 15 on the maximum side, your Honor.
The judge ultimately sentenced De Amiches to a term of seven to fifteen years on this count and, although De Amiches has not challenged this sentence, he was actually sentenced to a term of imprisonment applicable to an aggravated felony of the second degree. Former R.C. 2929.11(B)(2)(a). The prison term applicable to DeAmiches' offense, a second degree felony, was a minimum term of two, three, four, or five years, and the maximum term of fifteen years. Former R.C. 2929.11(B)(5). The State admits the error in its brief, and we find this misapplication of sentencing law plainly erroneous.
With respect to the remainder of the sentences, we review them pursuant to the mandates of R.C. 2953.08, which provides both the bases of appeal and our standard of review. That section provides that:
 (A) In addition to any other right to appeal * * * a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant on one of the following grounds:
 (1) The sentence consisted of or included the maximum prison term allowed for the offense by division (A) of section 2929.14 of the Revised Code * * * and the court imposed it under one of the following circumstances:
 (a) The sentence was imposed for only one offense.
 (b) The sentence was imposed for two or more offenses arising out of a single incident, and the court imposed the maximum prison term for the offense of the highest degree.
* * *
(4) The sentence is contrary to law.
* * *
 (G)(1) The court hearing an appeal of a sentence under division (A) * * * of this section may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the trial court for resentencing if the court clearly and convincingly finds any of the following:
 (a) That the record does not support the sentence; * * *
(d) That the sentence is otherwise contrary to law.
De Amiches received the maximum sentence on each count of his plea, and claims that the trial judge did not comply with sentencing procedures in imposing maximum sentences; specifically that, as a first offender, he was entitled to the presumption that the minimum prison term should be imposed pursuant to R.C. 2929.14(B), and that the judge failed to indulge that presumption. De Amiches also argues that the record does not support a finding that would rebut the presumption in favor of the minimum prison term, and also does not support the finding that he committed the worst forms of the offenses.
R.C. 2929.14 guides a judge in determining whether to impose the minimum or maximum prison term, as follows:
 (B) * * * [I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
 (C) * * * [T]he court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, [and] upon offenders who pose the greatest likelihood of committing future crimes * * *.
In addition to making these findings, R.C. 2929.19(B)(2)(d) requires that a judge not only make findings, but give reasons for imposing the maximum allowable prison term for any offense.
The record shows that the judge began her sentencing analysis by enumerating the seriousness and recidivism factors applicable to De Amiches' conduct under R.C. 2929.12. She found the seriousness of the conduct enhanced because the youthful victims suffered mental and emotional harm requiring counseling, and because he took advantage of a position of trust to commit the offenses. R.C. 2929.12(B)(1), (2), and (6). She did not address whether any factors enhanced the likelihood that De Amiches would commit future offenses, R.C. 2929.12(D), or whether any factors mitigated the seriousness of the offense or likelihood of recidivism. R.C. 2929.12(C), (E). After making the findings listed above, the judge first stated her conclusion that De Amiches was unfit for a community control sanction, and thus found that a prison term was appropriate, but did not acknowledge that imposition of a prison term for a rape offense was mandatory. R.C. 2929.13(F)(2). She next found that De Amiches' conduct qualified as one of the worst forms of the offenses because he had used a position of trust to exploit children, leaving them traumatized, but neither acknowledged nor discussed the initial presumption that De Amiches, as a first offender who had never served a prison term, should receive the shortest prison term authorized for each of his offenses.
The purpose of recorded findings is to confirm that the court's decision-making process included all of the statutorily required sentencing considerations. State v. Edmonson (1999), 86 Ohio St.3d 324,327, 715 N.E.2d 131, 134. The State contends that the judge expressly or impliedly made all findings required under R.C. 2929.14(B) and (C), and specifically argues that she expressly made the required findings under R.C. 2929.14(B) when she imposed the sentences consecutively, as she found consecutive sentences necessary to protect the public from the future crime by the offender.
We find the State's argument unpersuasive for both general and specific reasons. Generally, R.C. 2929.11 states that the two purposes of criminal sentencing are to punish the offender and to protect the public from future crime, the latter purpose accomplished by preventing future crime by the offender or by imposing a sentence designed to deter others from committing offenses. See, e.g., R.C. 2929.14(B) (prison term greater than minimum can be imposed on finding that it will protect the public from future crime by the offender or others.). R.C. 2929.12 then attempts to guide sentencing decisions by listing a non-exhaustive list of aggravating and mitigating seriousness and recidivism factors applicable to the individual defendant and offense. The seriousness factors of R.C.2929.12(B) and (C) relate to the offender's punishment under R.C. 2929.11. The recidivism factors of R.C. 2929.12 (D) and (E) reflect the need to protect the public from the particular offender. The need to protect the public from other offenders is not the subject of specific statutory factors.
R.C. 2929.14(B) and (C) reflect these same purposes, each requiring some type of finding concerning either the need for punishment or public protection before their application. Although repetition of the phrase protect the public from future crime might in some circumstances signal a reviewing court that a judge has read, understands, and has considered particular statutory language and factors, the mere repetition of this common phrase can often signify just the opposite; that a judge is not familiar with the statutory scheme, is not aware of and has not considered particular statutory factors, and is repeating statutory language to bolster an uninformed decision.
The Edmonson court required the record to show that a judge first considered imposing the minimum * * * sentence and then decided to depart from the statutorily mandated minimum based on one or both of the permitted reasons. Edmonson, 86 Ohio St.3d at 328, 715 N.E.2d at 135. There is no indication here that the judge was aware of the presumption afforded De Amiches in R.C. 2929.14(B), much less that she began her analysis from that presumption and departed from it only after finding that the offense was so serious or the risk of future crime so great that the presumption was rebutted. Edmonson does not allow implied findings, but requires specific and express reference of relevant factors to show their consideration. Id.
Not only do we object to the citation of some findings as generally applicable to show that a judge made all the findings required, we specifically reject the expression the State points to here. The judge stated that De Amiches had committed one of the worst forms of the offenses, imposed maximum prison terms for each offense, and then imposed the terms consecutively. By referring to a phrase uttered while imposing consecutive sentences, the State essentially claims that the judge applied the R.C. 2929.14(B) presumption only after determining that De Amiches should receive the maximum sentence for each offense. This does not accord with the proper meaning of a presumption, which designates a beginning point, not a passing reference after a decision has been made. Nor are we persuaded that the judge necessarily rejected the presumption based on the State's argument that the maximum consecutive sentences attest to her finding that minimum prison terms were unwarranted. We could only draw such a conclusion if the judge had shown her awareness and consideration of the General Assembly's directive in passing sentence.
The presumption of R.C. 2929.14(B) appears to reflect a belief that the punishment and specific deterrent effects of prison terms can be achieved in shorter periods when offenders have not previously been in prison. The presumption also could reflect a belief that such offenders ordinarily present a lower risk of recidivism. Whatever its purposes, we cannot simply assume that the judge would have imposed the same sentence if she had recognized and considered the legislative directive.
De Amiches also challenges the imposition of maximum prison terms, arguing that the record did not rebut the minimum sentence presumption, and did not show that he committed the worst form of the offense. We note that our review of whether the record supports such findings is limited; a judge has wide discretion to determine whether conduct supports findings under R.C. 2929.14(B) and (C), and we will reverse such findings only when the record clearly and convincingly shows otherwise. See State v. Kershaw (1999), 132 Ohio App.3d 243, 247, 724 N.E.2d 1176, 1179
(noting the abstract nature of the worst form factor); R.C.2953.08(G)(1)(a).
A judge who demonstrates an awareness of statutory sentencing requirements and considerations wields broad discretion in sentencing within the legislative scheme. It is our duty, however, to ensure that the sentence is the product of an informed application of that scheme. The current statutory scheme was enacted in an effort to reach some level of objective consistency and fairness in sentencing all offenders. R.C. 2929.ll. Although judges might reach reasonable conclusions if left to their own devices, the legislation reflects a belief that such haphazard proceedings are unpredictable and provide no guidance for future judges sentencing similar offenders.
Because we find that the judge did not consider the presumption that De Amiches should receive the minimum prison term for each offense, we cannot accept the findings that he committed the worst forms of the offenses. As De Amiches is entitled to the R.C. 2929.14(B) presumption, a decision to impose the maximum term can be valid only if it follows consideration and rejection of the minimum. Without a proper finding on this necessarily initial matter, we cannot confirm that the trial court heeded the enacted policy meant for curtailing the imposition of maximum terms. Edmonson, 86 Ohio St.3d at 329, 715 N.E.2d at 135.
De Amiches also asks this court to find that the record here does not support a finding that he committed the worst forms of the offenses. He argues that the digital penetration here does not qualify as one of the worst forms of a rape offense, that, in a conversation secretly recorded by the police, he told both girls that he had stopped his prior conduct and that the psychologist's report indicates that he is not a predator, is non-violent and is treatable. The State primarily argues that the judge's findings were justified because the victims of all the crimes were minors, and both rape victims were under age thirteen.
We begin our analysis by first presuming that De Amiches is entitled to the shortest prison term authorized for each offense. We find, however, that De Amiches' conduct rebuts the presumption with respect to the offenses here, because the record shows a pattern of continuing offenses of one form or another, culminating in the rapes of two victims. Because of this pattern of behavior, we find that minimum prison terms would demean the seriousness of all the offenses committed.
Despite our finding that the presumption in favor of minimum sentences is rebutted here, DeAmiches' lack of criminal history cannot be ignored in assessing whether maximum sentences should be imposed. R.C. 2929.14(B) and (C) are designed to limit the imposition of maximum terms to repeat offenders or, as already noted, those who committed the worst forms of the offenses. Although the goal of punishment is most closely tied to the seriousness of an offense, the determination of whether an offender committed the worst form of an offense also should be informed by the totality of circumstances, including whether he is a first offender, whether he presents a threat of future crime, and, if so, what type of crime is threatened. In close cases, a worst form finding should not be made if the defendant were entitled to an initial presumption of minimum sentencing, because we expect a prison term to have a greater effect when experienced for the first time.
We are convinced that the record does not support maximum sentences here. The judge and the State have pointed to the ages of the victims as aggravating factors but these are, however, elements of the offenses. De Amiches cannot be held to have committed the worst forms of the offenses by pointing to the factors that describe the offenses themselves. Although a victim's age is an appropriate consideration, it cannot be used as an aggravating factor when the age of the victim is itself an element of the offense, unless the judge provides some explanation why the victim's age presents something more than an element of the offense.
The General Assembly has prescribed sentences for rape and has defined rape as including the sexual penetration of a person under age thirteen. R.C. 2907.02(A)(1)(b). Where the rape of a child under thirteen is accomplished through force or threat of force, the statute provides for a mandatory life sentence. R.C. 2907.02(B). Had the General Assembly considered all other rapes of children under thirteen to be punished as the worst form of rape generally, it could have provided for mandatory imposition of ten-year sentences for these offenses regardless of further aggravating factors. The statute does not presume that all such rapes are the worst forms of the offense, and neither can we.
The judge's only other justification for finding the rapes to be the worst forms of the offenses was that De Amiches was the neighbor of one of the victims, and that one of the victims' parents accused him of taking advantage of her trust. While an aggravating factor, the record does not provide any details, such as whether De Amiches actively sought or cultivated the trust placed in him. This factor alone does not support imposition of maximum sentences.
Although the sentencing judge has considerable discretion in making the worst form determination, we cannot find that discretion unlimited, otherwise judges would be able to make a worst form finding and impose a maximum sentence by pointing to any circumstance of the offense. A review of our appellate decisions indicates that worst form determinations are made in rape cases when significant aggravating factors are present, such as violence or extensive criminal history. See State v. Gross (Aug. 17, 2000), Cuyahoga App. No. 76836, unreported (maximum sentence for rape of twelve-year-old with limited mental capacity; evidence of deception, force, and serious vaginal injuries contributed to finding despite elimination of force language from plea agreement, and defendant had criminal history); State v. Smith (Mar. 9, 2000), Cuyahoga App. No. 75512, unreported (maximum sentence for rape of twelve-year-old by defendant with several prior incidents with minors, as well as domestic violence arrests; evidence that victim was given alcohol and that force was used, again despite dropping force language from plea agreement); State v. Grider (Feb. 10, 2000), Cuyahoga App. No. 75720, unreported (maximum sentence for rape of fourteen-year-old cerebral palsy victim; defendant had prior felony record; remanded for resentencing); cf. State v. Williams (Oct. 7, 1999), Cuyahoga App. No. 74840, unreported (two consecutive seven-year sentences imposed for rapes accompanied by evidence of extensive domestic violence, physical and sexual abuse); State v. Rivera (May 6, 1999), Cuyahoga App. No. 73751, unreported (agreed six-year aggregate sentence for ambulance driver's rape of woman medically incapable of consent, resulting in her pregnancy; defendant had record of prior sex offenses); State v. Hall (Aug. 31, 2000), Cuyahoga App. Nos. 77607, 77608, unreported (two consecutive seven-year sentences for violent rapes).
Our review of cases indicates that De Amiches' conduct, while atrocious, does not qualify among the worst forms of the offense of rape. If courts do not apply some standard to the abstract worst form analysis, the statute will provide no guidance and thus serve no purpose. Although our analysis of sentencing in rape cases since reforms were enacted continues to show inexplicable variations, we must attempt strides toward consistency rather than abandoning any effort to effect the purposes of those reforms.
The first assignment of error is sustained. The second assignment of error states:
 II. THE TRIAL COURT ERRED IN ORDERING THE SENTENCES ON EACH OF APPELLANT'S OFFENSES TO RUN CONCURRENT [sic].
De Amiches in fact challenges the imposition of consecutive sentences in this assignment. His seven maximum (or beyond maximum) prison terms were imposed consecutively, resulting in a total sentence of forty-six to fifty-four years. We employ the same standard of review discussed in the first assignment of error, but apply it to the statutory requirements necessary for imposing consecutive sentences.
Before imposing consecutive sentences, R.C. 2929.14(E)(4) requires four findings:
 1) That consecutive sentences are necessary to protect the public from future crime or to punish the offender;
 2) that the sentences are not disproportionate to the seriousness of the offender's conduct;
 3) that the sentences are not disproportionate to the danger the offender poses to the public; and
4) either
 a) that the offenses were committed while the offender was awaiting trial or sentencing, or was otherwise under sanctions imposed, for a prior offense;
 b) that the harm caused was so great or unusual that no single prison term adequately reflects the seriousness of the offender's conduct; or
 c) that the offender's criminal history shows a need to protect the public from future acts by the offender.
The judge also is required to give reasons for these findings at the sentencing hearing. R.C. 2929.19(B)(2)(c). As already noted, the duty to state findings provides a judge the ability to show, on the record, the recognition and consideration of statutory criteria. A duty to state reasons in support necessarily indicates a heightened focus upon certain findings, and a need to show not only consideration, but reflection upon the purpose and necessity of such sentences. The statutory duties to state reasons for imposing maximum or consecutive prison terms reflect the serious nature of those findings and, at least to some extent, a legislative disfavor of such terms. A judge cannot impose maximum or consecutive sentences without first finding that legislative purposes will be served by their imposition and then stating why this finding was reached.
The imposition of consecutive sentences is subject to even greater restrictions than the imposition of maximum terms. While R.C. 2929.14(C) essentially allows a maximum term upon a finding that either the punishment or public protection purposes of R.C. 2929.11 will be served thereby, the imposition of consecutive sentences must be analyzed with respect to both purposes. Although the judge can impose the sentence primarily for punishment purposes (by citing the gravity of the offenses) or for public protection purposes, he must also find that the sentences are not disproportionate with respect to both purposes. Moreover, the judge may not consider whether the sentences are disproportionate with respect to the risk of future crime by others; R.C. 2929.14(E)(4) requires a finding that the sentences are not disproportionate to the danger the offender poses to the public.
The record here provides no reasons for the judge's stated findings concerning consecutive sentences, and the findings themselves again indicate nothing more than recitation of statutory language. The judge in fact stated in her findings that De Amiches;
 committed the multiple offenses while he was out, that the harm caused to the victims in this case was so great and unusual that no single prison term would be appropriate. And that the sentence should demonstrate that consecutive sentences are necessary to protect the public from the future crime by the offender.
The judge's first finding is incorrect, because De Amiches had no prior convictions and could not have been subject to a finding under R.C.2929.14(E)(4)(a), as the statement suggests. The second and third findings might have been applicable, but are unsupported by any reasons. Indeed, it is unclear whether the third finding relates to the first necessary finding under R.C. 2929.14(E)(4), or if the judge was finding the third alternative of R.C. 2929.14(E)(4)(c) applicable, as her earlier findings purported to find both R.C. 2929.14(E)(4)(a) and (b) applicable, despite the fact that only one of these findings was necessary. Notably absent is any finding concerning the proportionality of the offense to sentencing's punishment and protection purposes.
We also note the inconsistency of the judge's findings. De Amiches had no prior criminal history, and the maximum sentences were specifically related to the seriousness of the offenses rather than to the risk of future crime. Of the three alternative findings available under R.C.2929.14(E)(4)(a), (b), and (c), the only one possibly applicable to De Amiches was R.C. 2929.14(E)(4)(b), relating to the seriousness of the offenses. R.C. 2929.14(a) and (c), which are more concerned with the offender's criminal history and the consequent risk of future crime, could not have applied because De Amiches had no criminal history. Nevertheless, the judge purported to find at least one of these factors applicable or, alternatively, stated the primary finding that the sentences were necessary to protect the public from future crime by the offender, when all other findings appeared related to the need for punishment.
Although a criminal history is not necessary to show a risk of future crime, the statutory criteria indicate a belief that such risks are lower in the absence of such a history. The judge was required to provide reasons for her findings under R.C. 2929.19(B)(2)(c), and should have contained some explanation of the need to protect the public from future crime, especially when statutory factors indicated otherwise. The judge stated no reasons to support the imposition of consecutive sentences.
Finally, we reject any argument that the judge's stated reasons for imposing maximum prison terms can be used to support the consecutive sentence findings as well. As already noted, her reasons for imposing maximum sentences are suspect because she failed to begin with the presumption that minimum sentences were applicable. Moreover, the statute treats maximum sentences and consecutive sentences separately. A judge might impose maximum terms without finding consecutive terms necessary, or consecutive terms without finding maximum terms necessary. Just as one finding is not equal to another, we cannot assume the judge attached the same reasons to separate findings unless the judge so states. Because the findings necessary to support consecutive sentences differ from those necessary to support maximum prison terms, it does not necessarily follow that a particular reason will be applicable to different findings.
Because we have examined the record with respect to maximum sentences, we will also consider whether the record supports the imposition of consecutive sentences. We are convinced that it does not. Nothing in the record indicates that De Amiches presents an uncommon risk of recidivism, and the psychologist's report opines that treatment during his prison stay can significantly lessen his likelihood of re-offending. There is no basis for finding that the need to protect the public is proportionately served by the imposition of consecutive sentences here. The record also reveals no objective need to punish this offender more severely than others by imposing consecutive sentences, and especially by imposing all sentences for all counts consecutively. As already noted, the statutory scheme disfavors maximum sentencing, disfavors consecutive sentencing, and presumes that offenders serving prison terms for the first time will be more intensely affected by the experience and the State's goals can be achieved in less time. Once these factors are understood, one can also understand that the imposition of maximum sentences, consecutive sentences, or maximum consecutive sentences upon an offender serving his first prison term must be justified by extraordinary circumstances.
While De Amiches' conduct is despicable, in the universe of offenses it is not extraordinarily so. The forty-six- to fifty-four-year prison term imposed is excessive. See Gross, supra (fourteen-year total sentence for rape, abduction, and gross sexual imposition of twelve-year-old with limited mental capacity; evidence of deception, force, and serious vaginal injuries, and defendant had criminal history); Smith, supra (nineteen-year total sentence for rape and kidnaping of twelve-year old by defendant with several prior incidents with minors, as well as domestic violence arrests; evidence of force); Williams, supra (fourteen-year total for two counts of rape and twenty counts of gross sexual imposition against minor household members over an extended period, accompanied by evidence of repeated domestic violence, physical and sexual abuse); Hall, supra, (fourteen-year total sentence for two violent rapes).
While we understand and in some cases might even share a judge's distaste for certain types of offenses, statutory sentencing guidelines are intended to reduce just such judge-specific sentencing variations so that offenders can expect a consistent range of sentences for similar conduct. If we do not apply the sentencing statutes to curb idiosyncratic sentencing decisions, the legislation has lost its purpose.
The second assignment of error is sustained.
Having sustained De Amiches' assignments of error and analyzing the record ourselves, we modify the sentence imposed pursuant to R.C.2953.08(G). We sentence De Amiches to a nine year prison term for each rape offense, to a four-year prison term for each gross sexual imposition offense, to a six-year term for the second degree felony illegal use of a minor in nudity-oriented material offense, and to six-month terms for each fifth degree felony illegal use of a minor in nudity-oriented material offense. We impose an indefinite term of two to ten years on the pre-1996 offense of illegal use of a minor in nudity-oriented material. We order the prison terms served concurrently and give credit for time served. We do not disturb the remainder of DeAmiches' sentence; he remains adjudicated a sexual predator pursuant to R.C. Chapter 2950 and, because the judge did not advise him of post-release controls as part of his sentence under R.C. 2967.28, such post-release controls are not part of his sentence.
The judge is hereby directed to vacate her prior sentencing order journalized February 2, 2000, and issue a journal entry consistent with this opinion. The judge is further directed to take all necessary administrative steps to inform the prison system of De Amiches' modified sentence.
Judgment affirmed as modified.
It is ordered that appellant recover of appellee costs herein taxed.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's convictions having been affirmed as modified, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., CONCURS IN JUDGMENT ONLY; JAMES D. SWEENEY, P.J. CONCURS IN JUDGMENT ONLY WITH SEPARATE CONCURRING OPINION.
[1] Although De Amiches pled guilty to counts charging rape and gross sexual imposition of the same victim on the same date, he has not challenged his convictions and he has not argued here that these crimes were allied offenses of similar import. We will not address this issue, as we are unable to find plain error on the record.
[2] Post-release control, however, was not made part of DeAmiches' sentence.